Great Bay Power v. PECO Energy          CV-98-101-M    03/30/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Great Bay Power Corporation,
      Plaintiff

      v.                                    Civil No. 98-101-M

PECO Energy Company,
      Defendant


                          **O R D E R**


      Defendant, PECO Energy Company, seeks to preliminarily
enjoin plaintiff, Great Bay Power Corporation, from terminating
an agreement between them until the parties' respective rights
and obligations can be finally determined.  The agreement
designates PECO as Great Bay's exclusive agent for the purpose of
selling Great Bay's electrical energy (derived from an ownership
interest in the Seabrook nuclear power plant).  Having reviewed
the pleadings and memoranda filed, and having considered the
respective proffers at the hearing held on March 19, 1998, the
court denies defendant's motion (document no. 3).

      The analytical framework applicable in determining whether
to grant or deny preliminary injunctive relief requires a trial
court to consider four related factors: "(1) the likelihood of
success on the merits; (2) the potential for irreparable harm if
the injunction is denied; (3) the balance of relevant
impositions, i.e. the hardship to the nonmovant if enjoined as
contrasted with the hardship to the movant if no injunction
issues; and (4) the effect (if any) of the court's ruling on the

public interest." <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 15 (1st Cir. 1996).

A.    <u>Likelihood of Success</u>

Recognizing that decisions on preliminary injunctions "are to be understood as statements of probable outcomes" only, still, it appears very likely that defendants will prevail on the merits of this breach of contract action. <u>Id.</u> At 16 (quotation omitted). The grounds for terminating the contract given by Great Bay (Def. Ex. G) seem particularly weak. For example, Great Bay complained that PECO "failed to offer Great Bay's Power on a firm basis as required by the Services Agreement." Yet, the agreement negotiated by these sophisticated energy companies unmistakably provides in part that:

> PECO shall offer to arrange Firm Energy Transactions which in its <u>sole business judgment</u> will maximize the value of the Initial Power Amount; <u>provided</u>, <u>however</u>, <u>that in no event shall Great Bay have the right to compel PECO to offer for sale</u> a Firm Energy Transaction.

Def. Ex. C, § 4b. (emphasis added). Great Bay did not suggest in its termination letter that PECO's "sole business judgment" was improperly exercised, and in any event, Great Bay apparently negotiated away any right to compel PECO to offer for sale any particular Firm Energy Transaction. It is difficult to see what material breach occurred relative to form energy sales.

Great Bay also purported to terminate the contract on grounds that PECO failed to notify it in advance of a wholesale

2

power agreement PECO entered into with the Littleton (N.H.) Water and Light Department.  Def. Ex. G.  Great Bay says "PECO's sale of wholesale power to Littleton is a violation of the [agreement]."  Id.  But the agreement, counsel for Great Bay conceded, does not prevent PECO from selling its own power within the NEPOOL market (i.e. to Littleton), or from selling someone else's power for that matter, and, the only "prior notice" requirement is found in Section 4d of the agreement:

> Economic Disincentive.  If at any time (i) a portion of the Initial Power Amount is not committed to a Transaction, (ii) PECO simultaneously owns uncommitted Other NEPOOL Supply and (iii) PECO would retain more margin from a pending sale by utilizing such Other NEPOOL Supply than it would return by utilizing the uncommitted portion of the Initial Power Amount, then PECO shall notify Great Bay of such circumstances.

Def Ex. C (emphasis added.)  Again, Great Bay does not seem to claim (and did not claim in its termination letter) that PECO simultaneously owned uncommitted "Other NEPOOL Supply" when it entered into an agreement to supply power to Littleton.  And, the agreement does not seem to give Great Bay any particular right or remedy should PECO fail to give notice even when notice is required (hardly the stuff of a material breach).  The Littleton sale also appears to have been an uncovered "futures" sale.

Finally, if Great Bay in good faith thought PECO was in material breach, it had its own contractual duty to provide adequate written notice to PECO within 30 days of the alleged "material default," and to afford PECO fifteen days to cure.

3

Def. Ex. C, § 16a.  (Or, Great Bay could always exercise its rights under § 4b, "Termination for Convenience," — but the price might be more dear.)  Great Bay seems to have failed to comply with that obligation, and it is not clear that a cure (even assuming a breach) was unavailable.

So, all in all, Great Bay is on slippery footing and PECO is likely to prevail on the merits.

B.    Irreparable Harm

It is with regard to this factor that PECO fails to meet its burden of proof.  PECO has not shown that absent injunctive relief it will suffer irreparable harm.  PECO's principal damage, if Great Bay wrongfully terminated the contract, will be quantifiable and there is an adequate remedy at law — money damages.  PECO will be entitled to recover its anticipated profit on all sales of Great Bay power throughout the original term of the agreement, and may be entitled to other remedies at law as well.

PECO argues that its own business will be irreparably injured in the NEPOOL market — pointing out that it is difficult to transmit power into the NEPOOL market from the outside (for technical reasons related to power transmission) and that it must have a supply of power within NEPOOL in order to compete effectively.  But PECO is not a buyer of Great Bay power — it does not sell Great Bay power on its own account under the agreement, but sells only as Great Bay's agent.  If wronged by

4

Great Bay, it will recover all of its lost profit arising from the exclusive agency agreement (i.e. commission on all sales of Great Bay power). PECO remains free to sell its own power into NEPOOL, under the same difficult conditions as existed before, and it is free to sell power generated within NEPOOL (i.e. from "Other NEPOOL Supply"). All that has been lost to PECO if Great Bay wrongfully terminated is the profit to be had selling Great Bay's power, and that is quantifiable and compensable at law.

PECO then argues that its national business reputation will suffer irreparably if it cannot deliver power it has sold. But Great Bay is obligated to, and no doubt will, deliver on the contracts entered into by PECO on its behalf. And, PECO will presumably honor its own commitments.

Finally, PECO suggests that its reputation has and will continue to be irreparably injured by the adverse publicity resulting from Great Bay's public announcements regarding termination. In that regard, any continuing harm (PECO says prospective customers will view its business reputation for reliability as suspect) seems "tenuous [and] represents an overly speculative forecast of anticipated harm." Ross-Simons, 102 F.3d at 19.

While PECO has demonstrated a strong likelihood of success on the merits, requiring less than usual in the way of irreparable harm, nevertheless, PECO's proffer is still inadequate to show sufficient harm of an irreparable character to warrant injunctive relief. PECO's economic damages will be

5

calculable, and the feared harm to its goodwill is speculative in general and particularly uncertain on the proffers made and pleadings filed.

C.    Balance of Harms

The balance of harms is not particularly imposing either way it might be struck.  Great Bay's power is available for sale and whether PECO continues to sell it or Great Bay markets its own commodity poses no particular burden.  Issuing an injunction will not appreciably erase the negative effect on PECO's goodwill, if any, of the public announcements of termination already made by Great Bay, and issuing an injunction, reinstating PECO as Great Bay's sales agent likely would not appreciably alter its success in selling its electric power.

D.    Public Interest

Great Bay's power remains available to the public whether PECO or Great Bay markets that power in the relative short term. PECO's argument that national policies related to energy industry competition will be undermined should an injunction not issue seems a bit overstated.  I find no significant public interest effect from the failure to issue or the issuance of injunctive relief, as requested.

Accordingly, the court finding on balance that defendant has not met its burden of establishing sufficient irreparable harm to

warrant the issuance of equitable injunctive relief, defendant's

motion (document no. 3) is hereby **DENIED.**


        **SO ORDERED.**

                                        _____
                                        Steven J. McAuliffe
                                        United States District Judge

March 30, 1998

cc:   Thomas J. Donovan, Esq.
      Richard A. Johnston, Esq.
      Steven E. Grill, Esq.